Filed 12/17/14  P. v. Zuniga CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALBERTO ZUNIGA et al.,<br><br>    Defendants and Appellants. | B250738<br><br>(Los Angeles County<br>Super. Ct. No. BA383646) |

APPEAL from judgments of the Superior Court of Los Angeles County, Lisa B. Lench, Judge.  Affirmed with directions.

Christine C. Shaver, under appointment by the Court of Appeal, for Defendant and Appellant, Alberto Zuniga.

Mark S. Givens, under appointment by the Court of Appeal, for Defendant and Appellant, Juan Carlos Castillo.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Jonathan J. Kline and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Alberto Zuniga and Juan Carlos Castillo appeal from judgments entered after their respective jury convictions of two counts of attempted willful, deliberate, and premeditated murder and one count of shooting from a motor vehicle. The jury found true allegations that the crimes were committed for the benefit of a criminal street gang and that a principal intentionally discharged a firearm causing great bodily injury to one of the victims. Appellants seek reversal of their convictions on the grounds that (1) the expert testimony regarding the structure and activities of the Sureños gang within California's prisons and jails should not have been admitted because it was irrelevant, concerned uncharged bad acts, and was a violation of Evidence Code section 352[1] and federal due process rights, (2) the "roll call kites"[2] introduced as the basis for the gang expert's opinion were improperly authenticated and constituted inadmissible hearsay, and (3) the trial court's imposition of consecutive indeterminate life sentences plus 50 years in prison was an abuse of discretion. We find no prejudicial error and affirm the judgments. We order the abstracts of judgment modified to reflect that appellants' sentences for counts 1 and 2 should be served consecutively.

## FACTUAL AND PROCEDURAL SUMMARY

In April 2011, Darren Davis was with Hugo Mora, Jose Garcia, and other friends when they saw an SUV slowly driving back and forth. They noticed the rear window roll down, saw a male Hispanic in the back seat who yelled, "Florencia," and then heard gunshots. Garcia was shot once in the back. Mora called police. Garcia was taken to a hospital and was released the next day.

Officers searched the scene and found bullet holes in some vehicles near where the victims had been standing. They also recovered a spent bullet on the ground under one of

---

[1] Statutory references are to the Evidence Code, unless otherwise indicated.

[2] The prosecution's expert, Deputy Francis Hardiman, described "kites" as handwritten notes that are passed from one Sureños member to another to convey information between county jails and prisons. "Roll call kites" are used by "shotcaller[s]" in each housing module to update the list of Sureño inmates in the module. Each Hispanic inmate is required to report his name, booking number, gang affiliation, gang moniker, and next court date and location for recording in roll call kite.

the vehicles. Davis told police the SUV was a silver Lexus. Mora confirmed Davis' statements to police.

That evening, approximately 10 to 15 minutes after the shooting, undercover officers driving in an unmarked van observed a champagne-colored Lexus SUV with a Texas license plate. They noticed the driver was repeatedly looking in his rearview mirror and the two passengers in the back seat were looking over their shoulders suspiciously. After running the license plate and discovering the car had been reported as stolen, the officers requested backup. They continued following the SUV and were joined by additional undercover officers driving an unmarked sedan. The SUV pulled into the driveway of an apartment building on 57th Street. Castillo opened the rear passenger door and fled behind the apartment building. He was carrying a white cloth or T-shirt in his hands. Officers ordered the remaining suspects out of the vehicle. The driver, appellant Zuniga, and the remaining passenger, Jacob Juarez,[3] were taken into custody.

Officers searched the SUV and recovered a .38-caliber revolver. They also found a Florida Marlins cap with the number 13 stitched onto it. Following the path that appellant Castillo had fled, officers discovered a white T-shirt on the ground concealing seven live .38-caliber rounds. A replica handgun was recovered from a nearby trashcan. After Castillo was taken into custody, both appellants were placed together in a patrol car, where they made incriminating statements that were recorded.

Meanwhile, Davis and Mora were taken to a tow yard and identified appellants' Lexus as the car involved in the shooting. Davis also identified Castillo out of a six-pack photo array, but could not identify Juarez or appellant Zuniga in the other photo arrays. Garcia was interviewed at the hospital and identified the shooter as a young male with a bald head.[4] Forensic testing revealed the presence of Juarez's DNA on the revolver found in the SUV, and ballistics testing revealed the expended bullet found at the scene had

---

[3]    Juarez is not a party to this appeal.

[4]    All three witnesses recanted much of their prior statements at trial.

3

been fired from that revolver.

Each appellant was charged with one count of attempted willful, deliberate, and premeditated murder as to Garcia, one count of attempted willful, deliberate, and premeditated murder as to Mora, and one count of shooting from a motor vehicle. It also was alleged that a principal personally and intentionally discharged a firearm causing great bodily injury, and that each crime was committed for the benefit of, at the direction of, and in association with a criminal street gang.

At trial, the prosecution sought to introduce handwritten "roll call kites," which had been confiscated from inmates returning from their court appearances. These kites contained appellants' names and indicated they were affiliated with the Florencia 13 gang. Deputy Hardiman testified as an expert to establish the reliability of these kites, which would be used as the basis for a later gang expert's opinion testimony. Deputy Hardiman testified that there are two rival Hispanic crime groups within the California prison and jail systems and that the two groups agreed on a demarcation line, dividing California in half. The Hispanic inmates north of the line identify as Norteños and those south of the line as Sureños. Deputy Hardiman further elaborated on the organization and hierarchy of Sureños operating within the county jails. He explained the role of the organization's roll call kites, which contain inmates' names, booking numbers, gang monikers and affiliations, and next court dates and locations; he stated it was crucial that these kites contained accurate information. Deputy Hardiman also personally verified the accuracy of appellants' identifying information contained in the kites.

The prosecution then called its gang expert, Officer Guillermo DeLaRiva. He provided a history of the Florencia 13 gang, its current organization and territory, and indicated Florencia 13 members often wear Florida Marlins apparel because it features the letter "F." When shown the Florida Marlins cap recovered from appellants' SUV, Officer DeLaRiva opined that, because the number "13" was stitched into the cap, it was worn by a Florencia 13 member. The prosecutor presented a hypothetical with nearly identical facts to the present case and Officer DeLaRiva opined that the crime was gang related.

4

The jury found appellants guilty on all counts and found the gang allegations to be true. Appellants' motions for new trial were denied. For each of counts 1 and 2, appellants were sentenced to indeterminate life terms plus 25 years to life pursuant to Penal Code section 12022.53, subdivisions (d) and (e)(1). The court stayed the imposition of sentence for count 3 pursuant to Penal Code section 654.

These timely appeals followed.

## DISCUSSION

### I

We review the trial court's ruling on the admission of evidence for abuse of discretion. (*People v. Carter* (2003) 30 Cal.4th 1166, 1194.) "[A] trial court has broad discretion in admitting or excluding evidence, and we cannot conclude the court erred unless the court exercised its discretion in an arbitrary, capricious, or patently absurd manner that results in a miscarriage of justice. [Citations.]" (*People v. Guillen* (2014) 227 Cal.App.4th 934, 1014.) A trial court's sentencing decision is also reviewed for abuse of discretion and we "reverse only when there is a clear showing the sentence is arbitrary or irrational. [Citation.]" (*People v. Ogg* (2013) 219 Cal.App.4th 173, 185.)

### II

The trial court admitted testimony by the prosecution's experts to establish the reliability of the roll call kites. Reliability of the kites was an issue because Officer DeLaRiva relied on them in reaching his opinions about appellants' gang membership and that the shooting was gang related. Appellants argue the trial court abused its discretion in admitting this testimony because it went beyond establishing the reliability of the kites. Specifically, they challenge the experts' testimony about (1) the structure of the Sureños in the jail system, with explanations of the inmates running the organization, (2) the fact that Mexican Mafia members control gangs and make rules from prison, (3) the statement that all Hispanic inmates are a part of the Sureños and are required to participate in its activities, (4) the opinion that kites "allow a very large criminal organization to function" by being used to communicate orders around the jail and prison systems, discuss the criminal organization, and identify inmates who have been

5

"greenlight[ed]," (5) the statement that the presence of a letter "K" next to certain names on the kites indicates the inmate's participation in an extortion scheme run by the criminal organization, and (6) the narrative of the circumstances surrounding the confiscation of kites containing appellants' names, booking numbers, and gang affiliations. Appellants argue it was error to admit this testimony because it referred to uncharged bad acts, was irrelevant, and constituted a violation of section 352. Appellants also argue the introduction of this evidence rendered their trial unfair and unjust, in violation of their due process rights under the Fourteenth Amendment.

A.      *Forfeiture and Ineffective Assistance of Counsel*

"[A] judgment can be reversed because of an erroneous admission of evidence *only if* the record contains an objection both "'timely made and so stated as to make clear the specific ground of the objection'" or motion. [Citation.]"[5] (*People v. Polk* (2010) 190 Cal.App.4th 1183, 1194, italics added; § 353, subd. (a).) However, a defendant is excused from his or her failure to make a timely objection if it would have been futile to do so. (*People v. Hill* (1998) 17 Cal.4th 800, 820.)

Respondent argues appellants forfeited this claim by failing to timely object to all but one of the challenged statements.[6] We agree. Neither party has pointed us to, and we do not find, a record that appellants raised an objection based on evidence of uncharged bad acts, or impermissible character evidence, at trial.[7] Appellants' relevance and section

---

[5]      Appellants argue that appellate courts retain discretionary authority to review a claim that has not been preserved for appeal. They rely on *People v. Williams* (1998) 17 Cal.4th 148, 161-162, footnote 6 for this claim. However, the Supreme Court explicitly noted this discretionary authority does not exist "when the issue involves the admission [citation] or exclusion [citation] of evidence." (*Ibid.*) Since this case challenges the admission of testimony, it does not fall within this exception.

[6]      Appellants made a section 352 objection to the testimony that the kites were "what make[] the wheels go 'round on organized crime." The objection was overruled.

[7]      While they objected on section 352 grounds, this is insufficient to preserve the specific issue for appeal. (*People v. Doolin* (2009) 45 Cal.4th 390, 437 [defendant failed

352 arguments also were not properly preserved for appeal. At trial, appellants' counsel made several section 352 objections; some were sustained, at least one was overruled. Because the trial court sustained some of appellants' objections, appellants cannot claim their further attempts to object on section 352 and relevance grounds would have been futile.

Appellants argue that if their right to raise these arguments has been forfeited, it was the result of ineffective assistance of counsel. An appellate court may choose to consider the case on the merits when a claim of ineffectiveness of counsel is raised. (*People v. Neely* (2009) 176 Cal.App.4th 787, 795.) We thus address the merits of appellants' arguments below.

B.      *Alleged Errors Under State Law*

Appellants contend the trial court abused its discretion in admitting the prosecution's expert testimony to establish the reliability of the kites. They argue the testimony constituted evidence of uncharged bad acts, was irrelevant, and a violation of section 352. We disagree.

The experts' testimony establishing the reliability of the roll call kites did not constitute evidence of uncharged bad acts. Generally, evidence of a person's character is inadmissible "to prove his or her conduct on a specified occasion." (§ 1101, subd. (a).) Here, the testimony that Hispanic inmates are a part of the criminal organization and are required to participate in its activities was not introduced for the purpose of tarnishing appellants' character. Rather, it sought to establish the reliability of kites, which were the basis for Officer DeLaRiva's expert opinion. There was no testimony suggesting appellants carried out criminal acts on behalf of the Sureños. Neither Deputy Hardiman nor Officer DeLaRiva connected appellants to the criminal activities of the Sureños. When gang evidence is relevant to prove something *other* than the defendant's disposition to commit crimes, it does not constitute inadmissible character evidence. (*People v. Valdez* (2012) 55 Cal.4th 82, 131 [holding evidence showing the "workings

to preserve character evidence arguments for appeal because he only objected on section 352 grounds at trial].)

and activities" of the Sangra gang, as well as photos of defendant's gang tattoos, was not character evidence because it was relevant to motive and identity].) The trial court also instructed the jury that it may not use this evidence to conclude that appellants possess "bad character" or that they have a "disposition to commit crime." In the absence of evidence to the contrary, we presume the jury adhered to a court's instructions and did not consider the challenged testimony as improper character evidence. (*People v. Olguin* (1994) 31 Cal.App.4th 1355, 1373-1374.)

The testimony also was relevant and did not warrant exclusion under section 352. Relevant evidence is "evidence, including evidence relevant to the credibility of a witness or hearsay declarant, having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." (§ 210.) A court, in its discretion, may exclude evidence, even though it is relevant, "if its probative value is *substantially outweighed* by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352, italics added.) "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt. [Citation.]" (*People v. Crew* (2003) 31 Cal.4th 822, 842.)

Here, the prosecution sought to admit the roll call kites bearing appellants' names and gang affiliations as the basis for Officer DeLaRiva's opinion that appellants were members of the Florencia 13 gang. The court expressed concern with the "potential reliability of the information that[] [is] contained so as to make any reliance on that information by an alleged expert of any value." Noting the "obligation on the part of the People . . . to establish the authenticity of the things upon which the expert [will] rel[y]," it allowed, with limitations, evidence to establish the kites contained accurate information. The testimony of Deputy Hardiman and Officer DeLaRiva largely adhered to these limitations. They presented their opinions in a noninflammatory manner, referring only generally to crimes committed by the organization and instead focusing on

8

the importance of maintaining the accuracy of the kites.[8] The court held two sidebar conversations with counsel to limit and clarify the testimony to be presented as to minimize prejudice to appellants and confusion to the jury.

Appellants specifically object to Deputy Hardiman's statement that all Hispanic inmates belong to the Sureños. But as respondent notes, the testimony clearly indicated that a Hispanic inmate's affiliation with the Sureños was not a voluntary one. Deputy Hardiman testified that Hispanic inmates automatically "fall under the control" of the Sureños whether or not the inmate was a gang member prior to incarceration. Any prejudicial effect flowing from this testimony was minimal.

We cannot conclude that any prejudice flowing from the introduction of this testimony substantially outweighed its probative value.

C.      *Alleged Due Process Violation*

In a related argument, appellants contend the experts' testimony was "so prejudicial and inflammatory that it rendered [their] trial unfair and unjust, in violation of [their] Fourteenth Amendment rights." "[T]he admission of evidence, even if erroneous under state law, results in a due process violation only if it makes the trial *fundamentally unfair*. [Citations.]" (*People v. Partida* (2005) 37 Cal.4th 428, 439.)

Appellants analogize the facts of this case to that of *People v. Albarran* (2007) 149 Cal.App.4th 214 (*Albarran*). In *Albarran*, the defendant was charged with attempted murder, shooting at an inhabited dwelling and attempted kidnapping, along with other felony charges. (*Id.* at p. 219.) The prosecution sought gang enhancements for each charge. (*Ibid.*) At trial, the prosecution introduced testimony of a gang expert who opined that the shooting was gang related and described defendant's gang involvement, his tattoos, and his gang moniker. (*Id.* at pp. 220-221.) The expert also testified "at length" about the activities of the gang defendant belonged to, including a specific

---

[8]      This testimony was offered to illustrate that the jailhouse kites serve two primary purposes:  (1) to facilitate the passing of information, drugs, and other contraband, and (2) to inform the leaders of the organization of who is incarcerated in that jail or prison and what crimes they had been convicted of.

9

instance in which the gang made a death threat to police officers.  (*Id.* at p. 227.)  The prosecutor also referred to this inflammatory gang evidence several times during argument.  (*Id.* at p. 222.)  The jury convicted defendant and found the gang enhancement allegations to be true.  (*Ibid.*)  Defendant filed a motion for new trial, asserting there was insufficient evidence to support the gang enhancement allegations; defendant also sought a new trial on the underlying charges under the theory that, absent the gang allegations, the gang evidence was irrelevant and unduly prejudicial.  (*Ibid.*)  The trial court granted the motion as to the gang enhancement allegations but not the underlying charges.  (*Ibid.*)  Defendant appealed and the Court of Appeal reversed, finding an erroneous admission of gang evidence violated his federal constitutional rights to due process.  (*Id.* at p. 229.)  The court noted this "extremely and uniquely inflammatory" gang evidence "had no legitimate purpose in [the] trial" (*id.* at p. 230), concluding this was a "rare and unusual occasion[] where the admission of evidence has violated federal due process and rendered the defendant's trial fundamentally unfair."  (*Id.* at p. 232.)

Unlike *Albarran*, in which the gang evidence was rendered irrelevant by the court's dismissal of the gang enhancement allegations, the challenged testimony here was necessary to prove the reliability of the kites.  Nor was it so inflammatory as to "'"necessarily prevent[] a fair trial."'  [Citation]"  (*Albarran*, *supra*, 149 Cal.App.4th at p. 231, fn. omitted.)  Neither expert went into specific detail regarding the crimes committed by the Sureños nor suggested that appellants were actively involved in committing criminal acts on behalf of the Sureños.  This was not evidence that "could only have served to cloud [the jury's] resolution of the issues."  (*Id.* at p. 230, fn. omitted.)  Admission of this evidence did not prevent appellants from receiving a fair trial.

### III

Appellants also challenge the admissibility of the roll call kites on the basis of lack of a proper foundation and as inadmissible hearsay.  Respondent argues this argument is forfeited because appellants failed to object to the admission of the kites when they were offered into evidence.  However, appellants did object to admission of the kites on both

10

foundation and hearsay grounds at the section 402 hearing. The trial court allowed the prosecution to introduce them as long as the prosecution could establish their reliability through nonprejudicial evidence. Appellants' arguments were properly preserved for appeal, and we address the merits of each argument below.

A.     *Proper Foundation*

Appellants argue the roll call kites lacked foundation because they were not properly authenticated. "[E]ven though a writing is relevant and not subject to an exclusionary rule [citation], a foundation must be laid by authentication before it can be introduced into evidence. [Citations.]" (2 Witkin, Cal. Evidence (5th ed. 2012) Documentary Evidence, § 3, p. 151; Evid. Code, § 1401, subd. (a).) There are "innumerable ways in which a document may be authenticated by circumstantial evidence," (*McAllister v. George* (1977) 73 Cal.App.3d 258, 263) as long as that evidence is "sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is." (*Id*. at p. 262; § 1400, subd. (a).)

Appellants contend the authors of the kites were unknown and details about their authenticity "could only be answered with speculation and gross generalizations." But Deputy Hardiman gave detailed testimony regarding the hierarchal structure of the Sureños, the expectation that all Hispanic inmates self-report certain information to the organization, and how this information is used in roll call kites to transport drugs, share information, and exclude certain inmates from the organization. He opined that, because of their purpose, it is "critical" that the information contained in the kites is accurate and that members of the Sureños also take measures to verify the accuracy of the information.

The specific roll call kites bearing appellants' names, booking numbers, gang affiliations, and other personal information also were authenticated by Deputy Hardiman. He testified that he ran the names and booking numbers of every inmate listed on the kites and verified the information reflected on them was accurate. He also explained that members of the general public would not have access to all of the information contained in the confiscated kites, stating "[t]he only people that would have access to all of that is the individual themselves for each individual entry." (See § 1421 ["A writing may be

11

authenticated by evidence that the writing refers to or states matters that are unlikely to be known to anyone other than the person who is claimed by the proponent of the evidence to be the author of the writing"].) Given the general reliability of roll call kites and the accuracy of the contents of the specific kites in this case, the prosecution met its burden of proving their authenticity. (*People v. Morris* (1991) 53 Cal.3d 152, 205, disapproved on another ground in *People v. Stansbury* (1995) 9 Cal.4th 824, 830, fn. 1.)

We conclude the roll call kites were properly authenticated.

B.    *Inadmissible Hearsay*

Appellants also argue the roll call kites constituted inadmissible hearsay, so that it was error to admit them into evidence. We disagree. In formulating their opinion and relating it to the jury, experts may rely on hearsay evidence and, within the discretion of the trial court, recite the hearsay statements verbatim. (*People v. Valdez* (1997) 58 Cal.App.4th 494, 509.) Furthermore, "[i]f the statement is received as proof of something other than the truth of the statement itself, it is not hearsay." (*People v. Harvey* (1991) 233 Cal.App.3d 1206, 1220 [trial court did not err in admitting into evidence "pay-owe ledgers" because they were admitted as circumstantial evidence of cocaine sales and conspiracy, not for the truth of their contents].) The prosecution introduced the roll call kites not for the truth of their contents, but as the basis for Officer DeLaRiva's expert opinion concerning the gang enhancement allegations. The court allowed the evidence to be introduced for this limited purpose. Before deliberating, the jury was instructed to use the evidence concerning contents of the roll call kites only to evaluate Officer DeLaRiva's expert opinion and not for the truth of the matter asserted.[9]

---

[9]    The jury instructions stated:

"303. During the trial, certain evidence was admitted for a limited purpose. You may consider that evidence only for that purpose and for no other. I am referring to the evidence concerning the contents of the 'kites' seized at the county jail facility, statements of non-testifying police officers concerning statements made to them about gang membership or facts of the predicate acts."

"360. Officer DeLaRiva testified that in reaching his conclusions as an expert witness, he considered statements made by other non-testifying officers and/or gang members and the contents of 'kites' seized at a county jail facility. You may consider

12

Most hearsay problems will be cured by a limiting instruction to the jury that the statements should be used as the basis of the expert's opinion and should not be considered for their truth, and we presume juries follow such limiting instructions. (*People v. Williams* (2009) 170 Cal.App.4th 587, 622-623.) The trial court also did not err in admitting the roll call kites into evidence.

IV

Appellants argue the cumulative effect of these errors, asserted as to the admissibility of the kites or the testimony used to establish their reliability, rendered their trial fundamentally unfair and the verdict unreliable. While separate errors, individually harmless, may in combination rise to the level of reversible and prejudicial error, (*People v. Hill, supra,* 17 Cal.4th at pp. 844-845), that is not the situation in this case. As we explain, even assuming the trial court committed any errors, they were harmless beyond a reasonable doubt and do not have a cumulative prejudicial impact. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Because we find harmless error under the *Chapman* test, we need not conduct a separate harmless error analysis under the less demanding standard of *People v. Watson* (1956) 46 Cal.2d 818, 836. (*See People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 395 [declining to separately consider hearsay arguments under *Watson* standard because error was harmless under *Chapman*].)

All of appellants' arguments on appeal arise from the introduction of the roll call kites to support the gang enhancement allegations. Other testimony supporting the gang enhancement allegations remains unchallenged, and it was sufficient for the jury to find the allegations to be true. Officer DeLaRiva opined that appellants were gang members based on their tattoos and the fact that appellant Castillo had put up Florencia 13 graffiti on the walls of the courthouse holding cell. The shooting occurred in the territory of the Playboys, a rival gang of Florencia 13. Officer DeLaRiva further testified that the two gangs often commit violent acts against each other. He also opined that if a gang member carries out a shooting in a rival gang's territory and yells out his gang's name, he

those statements only to evaluate the expert's opinion. Do not consider those statements as proof that the information contained in the statements is true."

13

is doing so "in furtherance of [the] gang." This evidence supported the gang enhancement allegations, rendering the information contained in the kites cumulative. (*People v. Livingston* (2012) 53 Cal.4th 1145, 1159-1160; *People v. Arceo* (2011) 195 Cal.App.4th 556, 579.) Thus, Officer DeLaRiva's reliance on the roll call kites was helpful, but not necessary, in formulating his opinion supporting the gang enhancement allegations. Any evidentiary error by the trial court in admitting the kites into evidence, then, was harmless beyond a reasonable doubt. Finally, we find no cumulative prejudicial impact, as all of the alleged errors arose out of the admission of the kites. (*People v. Livingston, supra,* at p. 1179 [holding "[t]here was no other error to cumulate" into a prejudicial effect when the "only cognizable errors" stemmed from admission of two statements that were harmless].)

V

Appellants challenge the trial court's imposition of consecutive indeterminate life sentences plus 50 years to life. They argue the trial court failed to properly consider sentencing factors set forth in California Rules of Court, rule 4.425 in its decision to impose consecutive life sentences and failed to consider recent case law placing a heavy emphasis on a defendant's youth and background when the defendant faces a sentence equivalent to life without a possibility of parole. Respondent claims the issue is forfeited because appellants failed to object below, and we agree. (*People v. Scott* (1994) 9 Cal.4th 331, 356 ["complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"].) Even on the merits, however, we do not find an abuse of discretion by the trial court.

The trial court retains broad discretion in determining whether sentences are to run concurrently or consecutively. "[I]n the absence of a clear showing that its sentencing decision was arbitrary or irrational, a trial court should be presumed to have acted to achieve legitimate sentencing objectives and, accordingly, its discretionary determination to impose consecutive sentences ought not be set aside on review." (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) California Rules of Court, rule 4.425 states criteria which a

14

trial court may consider in determining whether sentences should run concurrently or consecutively: "(1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Cal. Rules of Court, rule 4.425(a)(1)-(3).) The trial court is not limited to these factors, as the "enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of *additional criteria* reasonably related to the decision being made." (Cal. Rules of Court, rule 4.408(a), italics added.)

In imposing consecutive life terms for each appellant, the trial court explained consecutive sentences were justified because "[i]t was a different victim involved with respect to count two." While this is not an explicitly defined criterion of California Rules of Court, rule 4.425(a), it is reasonably related to the enumerated factors listed in that provision because shooting at several individuals, even in the course of one continuous act, constitutes "separate acts of violence." (*See People v. Calhoun* (2007) 40 Cal.4th 398, 405-408 [holding it is proper for a trial court to base the imposition of consecutive sentences upon the existence of multiple victims]; *People v. Leon* (2010) 181 Cal.App.4th 452, 468 ["A trial court has discretion to impose consecutive sentences where, as here, a single act has resulted in crimes against multiple victims"].) Thus, we find the trial court acted within its discretion in imposing consecutive sentences based on the existence of multiple victims.

We also disagree with appellants' argument that the trial court failed to consider mitigating circumstances, such as appellants' criminal histories and background. With respect to appellant Zuniga, the probation officer's report noted that Zuniga had established a "pattern of escalating criminal behavior" and listed no mitigating factors. The probation officer's report for appellant Castillo reflects similar concerns, noting his prior juvenile adjudications for vandalism, burglary, possession of a firearm, resisting a peace officer, criminal threats, and intimidating a witness, and listing no mitigating

15

factors. The trial court was not presented with mitigating background information as to appellants in the probation officer's report or their sentencing memoranda. Neither counsel for appellants offered any such mitigating background information at the sentencing hearing.

Finally, appellants argue their youth constituted a mitigating factor in sentencing. Acknowledging that appellants were not juveniles at the time of the shooting, they nevertheless rely on *People v. Caballero* (2012) 55 Cal.4th 262. That case held that a *juvenile* convicted of a *nonhomicide* offense, who is sentenced to a prison term with a parole eligibility date that falls outside his or her life expectancy, suffers an Eighth Amendment violation. (*Id.* at p. 268.) Neither Zuniga, who was 22 years old, nor Castillo, who was 18 years old, was a juvenile, and each was convicted of attempted premeditated murder. We recognize that the "'qualities that distinguish juveniles from adults do not disappear when an individual turns 18.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1380, quoting *Roper v. Simmons* (2005) 543 U.S. 551, 574.) However, as we previously noted in *People v. Argeta* (2012) 210 Cal.App.4th 1478, 1482, "a line must be drawn at some point." The trial court did not abuse its discretion in not explicitly weighing appellants' youth in its sentencing decision.

VI

Respondent points out that the abstracts of judgment as to both appellants erroneously fail to note that the sentence on count 2 should run consecutively to the sentence for count 1. Appellants do not dispute this contention and the reporter's transcript of the sentencing proceedings indicates the sentences were imposed consecutively. We direct the trial court to amend appellants' abstracts of judgment to reflect that the sentences for counts 1 and 2 should be served consecutively.

16

## DISPOSITION

The judgments are affirmed. The trial court is directed to amend appellants' abstracts of judgment to reflect the sentences on counts 1 and 2 are to be served consecutively.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**

EPSTEIN, P. J.

We concur:

WILLHITE, J.

COLLINS, J.

17